E. A. EDWARDS v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 18 March, 1908).

1. Telegraph Companies—Negligence—Two Messages—Question at Issue.

When the complaint alleges damages on account of plaintiff's being prevented by negligence of defendant from attending the funeral of his deceased father, and there were two messages, one announcing the dying condition and the other the death, place of burial, etc., the real question at issue turns upon the second message.

2. Telegraph Companies—Instructions, Incomplete—Special Delivery Charges.

When prayers for special instruction in a suit against a telegraph company for negligent delay in delivering a telegram, for which special delivery charges were claimed by defendant, state that the addressee lived five or six miles from the telegraph office, and the evidence disclosed that it was not more than four, it was not error of the court below to refuse to give them.

3. Telegraph Companies—Instructions—Negligence—Office Hours.

The following instruction as to the office of a telegraph company being closed at night was properly refused: "The company is not bound either to deliver, send or receive a message after office hours, unless by course of dealing or custom it has waived such hours, and a message so received may be held and delivered in a reasonable time after opening of office hours next day."

4. Telegraph Companies—Instructions—Abstractions.

When the prayer for instruction presents an abstraction, and not the material facts and legal conclusions therefrom involved in the proposition, its refusal is not reversible error.

5. Telegraph Companies — Office Hours — Terminal Office — Special Delivery Charges Required—Service Message—Duty of Terminal Office.

When it appears that the terminal office of transmission of a telegram received it after office hours, that a special delivery charge was necessary for delivery, and that the message could have been delivered the next morning had such charges been paid, it is the duty of the terminal office, when consistent with the office hours at the other points, to immediately wire back as to the extra charges, when that course would have secured such charges and enabled the defendant to deliver the message in time to avoid the injury the following morning.

6. Telegraph Companies—Negligence in Delivery—Proximate Cause. -

When, notwithstanding the negligence of the defendant, the plaintiff could have taken a train and arrived in time for the funeral of his deceased father, and made no effort to do so, his negligence would be the proximate cause of the injury and would bar his recovery in a suit for the damages alleged on account of being prevented from attending the funeral.

CIVIL ACTION, tried before *Neal, J.,* and a jury, at September Term, 1907, of the Superior Court of MARTIN County.

Judgment for plaintiff.   Defendant appealed.

The facts sufficiently appear in the opinion of the Court.

*Gilliam & Martin* for plaintiff.
*Harry W. Stubbs* and *Tillett & Guthrie* for defendant.

CLARK, C. J.   At 4:20 P. M. (by evidence for defendant), 12 January, 1906, the plaintiff's mother caused the following telegram to be delivered to defendant's agent at Lowell, N. C.:

"E. A. EDWARDS,
                    *Jamesville, N. C.*
    "Your father is dying; come at once.
                                        "ISABEL EDWARDS."

    Later in that day, near 5 or 6 P. M., by witness for plaintiff, and 10:20 P. M., according to defendant's witness, a second message was sent plaintiff, as follows:

    "Your father will be buried at Cumberland Union, Sunday.    We go *via* Greensboro to Fayetteville.
                                        "ISABEL EDWARDS."

    The defendant's operator at Lowell testified that the usual time for transmission of a message from Lowell to Jamesville is thirty to forty minutes.    The operator at Jamesville says that he received the first message at 7:30 P. M. and the second one at 7:30 A. M. next day; that he found a man that night who agreed to take the first message out to plaintiff early next morning, and he tied the message outside to the shutter, but the man did not take it, and the operator made no other effort to send it out to plaintiff, and no effort whatever to send out the second message.    He says he knew where plaintiff lived. The evidence is that plaintiff lived four miles from Jamesville, and he says he was at home that night.    He says he could have taken a freight train which left Jamesville about midday, 13 January, and have gotten to Fayetteville in time for the funeral, and would have gone if he had received the telegram in time, but he did not hear of the telegrams till 3 or 4 P. M., 13 January, when he was in Jamesville, whereupon he went down to the depot, one-half mile away, and found the telegrams lying on the table and the operator laughing and talking with some young men; that to his inquiry, "Why did you treat me so?" the operator replied, "I don't know"; that the operator said he had directions to deliver at all hazards.

J. W. Groves, who delivered the message to the operator at Lowell, testifies that he told him to send them off "Paid; all charges guaranteed."

The operator at Lowell denies this. He says that his office was open all night, and that he received the second message at 10:20 P. M. The operator at Jamesville says his office hours were from 7 A. M. to 7 P. M., but that night he was open at 7:30, and took the first message.

Much stress was laid in the argument upon "office hours," but we cannot see that they have any bearing. The first message was handed in at Lowell at 4:20 P. M. and received at Jamesville at 7:30 without demur, and the operator says he made full effort to deliver it that night. Besides, as the plaintiff could not possibly have reached Gastonia before his father's death, and the cause of action stated in the complaint is for failure to reach Fayetteville in time for the funeral, the real question at issue turns upon the second telegram. If this second message was handed in at Lowell at 5 or 6 P. M., according to evidence for plaintiff, then it is negligence, unless cause were shown, that it was not delivered at Jamesville before office hours closed, at 7 P. M. This point, however, seems not to have been pressed, doubtless because of the operator's testimony that he made every effort, but in vain, that night to send out the first message. The operator at Lowell further testified that he did not receive the second telegram till 10:20 P. M.

The exceptions of defendant are solely to refusals to charge and to the charge. Exceptions 1, 4 and 5 need not be discussed, as they are based on a recital in each that the plaintiff "lived some five or six miles from Jamesville." His evidence is uncontradicted that he lived "four miles off," and the court was not required to correct the prayer. Exceptions 2 and 3 are to refusal to charge that "the company is not bound either to deliver, send or receive a message after office hours, unless by a course of dealing or custom it has waived such

hours; and a message so received may be held and delivered in a reasonable time after opening of office hours next day." This prayer is contrary to repeated decisions of this Court. *Carter v. Telegraph Co.,* 141 N. C., 374, and cases there cited. Besides, by defendant's evidence, both messages were received within office hours at Lowell, and, as the second message, on which the cause of action (for failure to reach the funeral) rests, was received at Jamesville within office hours, *i. e.,* at 7:30 A. M., the prayer is a pure abstraction, and its refusal could not be error.

Exception 6 is for refusal to charge that, "If the defendant used due diligence in trying to send to plaintiff next morning in time for him to catch the morning train," etc. But, upon the operator's own showing, he made no effort whatever on the "next day," 13 January, to deliver either message.

The court gave the following prayers, at the request of the defendant: "If the jury shall find from the evidence that the second message was received at 7:30 in the morning, 13 January, 1906, and if they shall further find that the morning train passed Jamesville, N. C., on schedule time, about 8 o'clock A. M., and that the defendant could not, with all due diligence, have gotten the message to plaintiff, six miles in the country, in time for him to have taken said train, then the defendant would not be negligent as to that message, unless they should further find that said message was delivered too late to catch the afternoon train, the only other train going west on that day." "It being admitted that said messages were delivered too late for the plaintiff to catch the morning train, yet, if the jury find from the evidence that said messages were delivered in time for plaintiff to have caught the afternoon train going west, and they further find that by the taking of said train the plaintiff could have made the proper connections and reached the place of burial in ample time, and that plaintiff made no effort to do so, after being advised by defendant's agent, then the plaintiff himself would have

been negligent; and, the same being the proximate cause of his alleged grievance, he would not be entitled to recover, and you should answer the second issue 'Nothing.' "

Exceptions 7, 8 and 9 require no discussion.     They are without merit.

The tenth exception is to the following paragraph of the charge: "The court further charged the jury that it was the duty of the sender to have guaranteed all charges, including transmission and delivery charges; but that, if he failed to guarantee all charges for transmission and delivery, still, if the message was received at 7:30 P. M., showing that a father was dying, that the operator at Jamesville knew where the addressee lived, that the telegram was transmitted from Lowell through the Charlotte and Norfolk offices, and they stayed open all night, and messages under usual conditions could be transmitted in an hour, it was the duty of the operator down at Jamesville to send an office message that night and ask Lowell if the delivery charges were guaranteed, and if the operators at the two points, Lowell and Jamesville, had time to get information and deliver the messages in time for the plaintiff to go to the funeral, and failed to do so, and did not deliver the messages, that would be actionable negligence, for which the defendant would be liable, provided the plaintiff was damaged thereby."

The defendant's witness testified that the Lowell, Charlotte and Norfolk offices stayed open all night, and a message would require thirty or forty minutes in transmission.     The operator at Jamesville received the message at 7:30 P. M., without demur.     He says he knew where the plaintiff resided, and, as rule 50 of the rules of the company provides for delivery of such messages "at actual cost of delivery service," if unwilling to undertake a delivery, trusting to plaintiff paying the cost (*Mott v. Telegraph Co.,* 142 N. C., 537), he should at once have sent a service message asking if costs were guaranteed.     *Carter v. Telegraph Co.,* 141 N. C., 374.     He would

not have needed to hold the office open until the Lowell office replied. Had he sent the message, the reply should have been there next morning at 7 :30, when he got the second message.

His Honor made his instruction contingent upon there being time for a reply to the service message in time for delivery of the telegrams the next day to the plaintiff, four miles away. If sent out so as to reach him by 11 A. M., or even later, he could have had time to take the midday freight, or "afternoon train," as the defendant's operator calls it, and he could have reached Fayetteville in time for the funeral. Upon the operator's own testimony, he made no effort whatever during the next day to deliver these urgent telegrams, which the ordinary feeling of humanity, as well as his duty, required him to do. He knew where plaintiff lived. He says he went to his office at 7 A. M. He knew the plaintiff could take the midday train and reach Fayetteville in time for the funeral, so he says, but he made no effort to deliver the telegrams, and the plaintiff, going to the telegraph office to inquire, finds them on his table, in the middle of the afternoon, and, when asked why he acted thus, the operator replied: "I don't know." Can there be any doubt that the defendant was negligent in its duty to this plaintiff and caused him detriment?

The real facts at issue, as contended for by the defendant, were fairly presented in the two instructions above set out, which were given at the request of the defendant itself. These prayers are based upon the presumption, too, that the plaintiff's evidence was untrue that the charges were "guaranteed" when the messages were sent, for, if there was such guarantee, it was negligence of the defendant that such fact was not wired when the messages were sent.

No Error.