PATRICIA S. JORDAN v. EASTERN TRANSIT & STORAGE COMPANY, INCORPORATED.

(Filed 14 January, 1966.)

**1. Pleadings § 28—**

Plaintiff can recover only on the theory of her complaint.

**2. Warehousemen § 1—**

Plaintiff's allegations and evidence were to the effect that defendant packed, transported and stored plaintiff's goods and that while the goods were in the exclusive possession of defendant some of them were lost and others damaged. Plaintiff alleged that the loss and damage occurred while the goods were in storage. *Held:* The burden was not upon plaintiff to show that the loss and damage occurred after the goods had been stored, but upon defendant, if it sought to escape liability on the ground that the loss and damage occurred prior to storage, to prove such circumstances as a defense to plaintiff's claim, the facts being peculiarly within the knowledge of defendant.

**3. Trial § 38—**

The court correctly refuses to give an instruction not supported by any view of the evidence in the case.

**4. Warehousemen § 1—**

Plaintiff's evidence to the effect that she delivered to defendant warehouseman articles of personalty in good condition and that defendant failed to redeliver some of the articles and delivered others in damaged condition is sufficient to support a finding by the jury that defendant through its negligence lost the missing articles and damaged those which were redelivered to plaintiff in damaged condition.

**5. Same—**

The provisions of a bill of lading issued by a carrier-warehouseman that it should not be liable for loss or damage to articles packed by other than its employees or breakage of articles not described as fragile, and that it should not be liable for the contents of any specific cartons unless the articles packed therein were specifically itemized in the receipt, *held* not applicable when the carrier-warehouseman itself packed the articles.

**6. Same; Contracts § 10—**

The rule that a common carrier or a public utility may not contract against its liability for negligence is applicable to warehousemen, G.S. 27-7, and such rule precludes also a stipulation limiting liability for loss or damage to an amount which the warehouseman knows, or in the exercise of ordinary judgment should know, is greatly less than the value of the articles received by it.

**7. Same—**

Where the warehouseman itself packs the household furnishings, china and silver delivered to it, it is charged with the knowledge that the value of a barrel or carton of such articles would exceed $50.00, and its stip-

ulation of limitation of liability for loss or damage to $50.00 to any one carton or barrel is void.

**8. Same—**

Where a warehouse receipt stipulates that the warehouseman received goods enumerated thereupon subject to the terms and conditions on the back thereof, the shipper, by signing an entirely different statement also appearing on the face of the receipt, is not bound by a stipulation on the back that the goods delivered were of a value not in excess of $50.00 per container.

APPEAL by defendant from *Huskins, J.,* 31 May 1965 Regular Schedule B Civil Session of MECKLENBURG.

The defendant is the owner and operator of a public warehouse in the City of Charlotte. The plaintiff stored in the warehouse her household furnishings. She alleges that when she called upon the defendant for the return of her properties some of the articles were not redelivered and others were redelivered in a damaged condition, due to the negligence of the defendant. She alleges that the lost articles were of the value of $5,897, and that the damage to the articles which were returned amounted to $1,175.50. She sued for the total of these sums.

The answer denies negligence, denies any failure to redeliver and denies that any of the property was damaged. It further denies the value of the properties as alleged by the plaintiff. As a further defense, the defendant pleads the following provisions of the warehouse receipt issued by it to the plaintiff:

"6. The Company shall not be liable for any loss, damage or injury to fragile articles that are not packed, or that have been packed or unpacked by others than the employees of the Company, or that are not known or described as fragile articles. Where the contents of any barrel, cask, box or other parcel are not specifically itemized in the receipt, the Company shall not be liable to account for the particular contents of any such piece or parcel.

"7. The above named Depositor declares that the value of any article, piece or package including the contents thereof, packed, handled, carted or stored in this lot, or later received for the account of same, Depositor, does not exceed the sum of Fifty Dollars ($50.00), upon which valuation the rate is based, and the liability of the Company for any causes which would make it liable in case of loss or damage, while goods are in its possession, shall not exceed the sum so declared unless the owner or representative fixes a greater value and agrees to pay an additional charge of 25 cents per One Hundred Dollars ($100.00) per month thereon."

The court instructed the jury that provisions 6 and 7 of the warehouse receipt were unenforceable in this action and must be given no consideration by the jury.

The verdict of the jury was that the defendant, through its negligence, failed to redeliver to the plaintiff her property or delivered it in a damaged condition, as alleged in the complaint, and that she was entitled to recover therefor $5,000. From a judgment in accordance with the verdict the defendant appealed, assigning as error the court's above mentioned instruction with reference to paragraphs 6 and 7 of the warehouse receipt, and the court's denial of the defendant's requests that the jury be instructed: (1) That the maximum amount of damages to be awarded could not exceed $50.00 for any one barrel or package of goods; (2) that any loss or damage which may have occurred before the plaintiff's property was received and stored in the warehouse in Charlotte could not be considered by the jury; and (3) that the jury should consider only such loss and damage as the plaintiff has, by the greater weight of the evidence, satisfied the jury occurred after the property was received and stored in the warehouse.

The facts material to this appeal, as to which there is no substantial conflict in the evidence, may be summarized as follows:

In February 1960, the plaintiff, then residing in New Jersey, decided to move to Charlotte where her parents reside. On her behalf, her father made arrangements with the defendant in Charlotte for it to transport her household furniture and belongings to Charlotte for storage in the defendant's warehouse until the plaintiff was ready for their redelivery to her at her new home.

In due time, a truck of the defendant, with two of its employees, arrived at the plaintiff's residence in New Jersey. They packed and loaded on the truck the plaintiff's household furniture, china, silver, glassware and other belongings. The plaintiff had no substantial part in such packing. The defendant's employees packed the plaintiff's silver, dishes, glassware and similar fragile articles in cartons or other containers designated by them as "barrels." These "barrels" are customarily used by such carriers and warehousemen for the packing of fragile articles. No inventory of these articles, or of the contents of any carton or "barrel," was prepared. All the articles were in "perfect condition" when so packed by the defendant's employees. The plaintiff signed the bill of lading in a "box" thereon containing a place for a declaration of the value of the property but no valuation was stated therein. In another portion of the bill of lading, it was stated that the rates for transportation were based upon a "release value of $ .30 per pound per article." The total weight being 7,190 pounds, this would have resulted in a

total "release value," according to the bill of lading, of $2,157. However, the bill of lading also shows that the plaintiff was charged a premium for $5,000 of transit insurance.

Upon its arrival in Charlotte, the plaintiff's property was placed by the defendant in its warehouse. It prepared a warehouse receipt in which it listed 209 items, including various articles of furniture and household appliances and numerous items listed simply as "barrel" or "carton." Nothing was stated thereon as to the contents of any such "barrel" or "carton."

The receipt stated above the list of the items that the properties so listed were "to be stored at warehouse * * * upon the terms and conditions on the back of this receipt." These terms included paragraphs 6 and 7 above quoted. These and a number of other terms and conditions were printed on the reverse side of the receipt in small but legible type, occupying only half the space available on the sheet. That is, these terms and conditions could have been printed in substantially larger type upon the reverse side of the receipt had the defendant desired to do so.

Upon the face of the receipt, near the bottom and below the list of items, the plaintiff signed her name under the statement, "I acknowledge that the condition of the goods at the time of the loading is as noted on this inventory and that I have received a copy of this inventory." The document contained no statement as to the condition of many of the barrels and cartons and, as to each of the others, stated only that the condition was unknown. The receipt and inventory was so signed by the plaintiff and a copy thereof delivered to her after her goods reached Charlotte and were in the defendant's warehouse.

The plaintiff paid the defendant for the storage of her property approximately $28.00 per month for many months, this being at the rate of 40 cents per hundred pounds. From time to time, she removed articles from storage. When she found some of these items had been damaged, she so advised the defendant's president. He suggested that she wait until she took all of the items out of storage and then submit a claim for whatever total damage was discovered. Having ultimately unpacked all of the containers, she prepared a list of the missing items and a list of those damaged, which lists were put in evidence with evidence as to the value of the missing articles and the amount of the damage to the others. The defendant offered no evidence in contradiction.

*J. Donnell Lassiter; Kennedy, Covington, Lobdell & Hickman for defendant appellant.*

*Moore and Van Allen by John T. Allred for plaintiff appellee.*

LAKE, J.  There was no error in the court's refusal of the defendant's request for instructions 2 and 3. In effect, the defendant requested the court to instruct the jury that the plaintiff could not recover in this action for any loss or damage which occurred before her property reached Charlotte and was stored in the warehouse and that the burden was upon the plaintiff to show, by the greater weight of the evidence, how much of her loss and damage occurred after her goods were so stored.

The defendant was both the carrier and the warehouseman. As carrier, it packed the articles into the "barrels" and "cartons." Had it so desired, it could have prepared an inventory, item by item, showing the then condition of each item. It did not do so. The plaintiff testified that the items she alleges were lost were so packed by the defendant's employees and that all of the lost articles as well as all of those she alleges to have been damaged were, when so packed, in "perfect condition." There was no evidence to the contrary. From that time until the cartons and "barrels" were redelivered to the plaintiff they remained continuously in the possession and control of the defendant.

Of course, the plaintiff, having alleged in her complaint loss of and damage to her property while it was in the possession of the defendant in its warehouse in Charlotte, pursuant to its contract as warehouseman entered into on 24 February 1960, could not recover in this action for loss or damage which occurred prior to that time, at a different location and while the property was in the defendant's possession under a different contract creating a different relationship. The plaintiff can recover only on the theory of her complaint. *Hormel & Co. v. Winston-Salem*, 263 N.C. 666, 140 S.E. 2d 362; *Howell v. Smith*, 258 N.C. 150, 128 S.E. 2d 144; *Fox v. Hollar*, 257 N.C. 65, 125 S.E. 2d 334. Thus the proposition of law upon which these requests of the defendant were based is sound. However, it is not applicable to this action for there is no suggestion in either pleading, or in the evidence offered by either party, that any loss or damage occurred before the plaintiff's property reached Charlotte and was stored in the defendant's warehouse.

The plaintiff, having introduced evidence to show that her properties were lost and damaged while in the exclusive possession and control of the defendant, the burden was upon the defendant to show where and when the loss and damage occurred, if it relies upon those circumstances as a defense to the plaintiff's claim, the facts being peculiarly within the knowledge of the defendant. See: *Hosiery Co. v. Express Co.*, 184 N.C. 478, 114 S.E. 823; *Ange v. Woodmen*, 173 N.C. 33, 91 S.E. 586; *Furniture Co. v. Express Co.*,

144 N.C. 639, 57 S.E. 458; *Meredith v. R. R.,* 137 N.C. 478, 50 S.E. 1; Stansbury, North Carolina Evidence, § 208.

No such evidence having been offered by the defendant and no contention having been made by it, in its pleadings or otherwise, that it lost or damaged the plaintiff's articles while they were in its possession as carrier, it was not necessary for the court to instruct the jury as to the law which would have governed the case if such facts had been shown. On the contrary, it is error for the court to charge on abstract principles of law not supported by any view of the evidence. *Pressley v. Pressley,* 261 N.C. 326, 134 S.E. 2d 609; *Chappell v. Dean,* 258 N.C. 412, 128 S.E. 2d 830. It is clearly not error to refuse a request for such an instruction. *Edwards v. Telegraph Co.,* 147 N.C. 126, 60 S.E. 900.

There was also no error in the instruction to the jury that paragraphs 6 and 7 on the back of the warehouse receipt are "unenforceable in this law suit," and, therefore, the jury was to give no consideration to those provisions, or in the refusal of the court to give the instruction requested by the defendant to the effect that the amount recoverable by the plaintiff could not exceed $50.00 for the contents of any one "barrel" or "carton."

The evidence of the plaintiff is sufficient to show that all of the articles were delivered to and packed by its employees in New Jersey. They were transported by the defendant to its warehouse in Charlotte and stored there by it. All of the articles were in "perfect condition" when delivered to and packed by the defendant. Thereafter, the defendant failed to redeliver some of the articles and delivered others in a damaged condition. This was sufficient to support the jury's finding that the defendant, through its negligence, lost the missing articles and damaged those which were redelivered to the plaintiff in that condition. *Swain v. Motor Co.,* 207 N.C. 755, 178 S.E. 560; *Morgan v. Bank,* 190 N.C. 209, 129 S.E. 585; 42 A.L.R. 1299.

We need not determine the validity of paragraph 6 of the terms and conditions printed upon the back of the warehouse receipt for, by its terms, it is inapplicable to this transaction. The articles were packed by the defendant and so it knew they, or many of them, were fragile. It was the defendant, not the plaintiff, who knew what went into each "barrel" or carton. It could have made an inventory of the contents of each container had it so desired. Such a provision in a bill of lading must be construed against the carrier, who prepared it, in case of an ambiguity. 13 Am. Jur. 2d, Carriers, § 280.

Contracts exempting persons from liability for negligence are not favored by the law and are strictly construed against the party claiming such exemption. *Neece v. Greyhound Lines,* 246 N.C. 547,

99 S.E. 2d 756, 68 A.L.R. 2d 1341; *Hall v. Refining Co.,* 242 N.C. 707, 89 S.E. 2d 396; *Winkler v. Amusement Co.,* 238 N.C. 589, 79 S.E. 2d 185; *Hill v. Freight Carriers Corp.,* 235 N.C. 705, 71 S.E. 2d 133; *Insurance Ass'n v. Parker,* 234 N.C. 20, 65 S.E. 2d 341. However, in the ordinary economic relationships, the law accords to contracting parties freedom to bind themselves as they see fit and such a contract, if clearly intended to have that effect, will be enforced, at least where the parties have relatively equal bargaining power. *Hall v. Refining Co., supra.* There are, however, other economic relationships in which, by reason of exceptional public interest in the services involved or because of the obvious inequality of the bargaining powers of the parties, it is held that such contracts are contrary to public policy and are void and unenforceable. On this ground, it has long been held that, in absence of statutory authorization, a common carrier or other public utility may not contract for its freedom from liability for injury caused by its negligence in the regular course of its business. *Hall v. Refining Co., supra; Insurance Ass'n v. Parker, supra; Hill v. Freight Carriers Corp., supra; Gardner v. R. R.,* 127 N.C. 293, 37 S.E. 328.

G.S. 27-7, which is part of the Uniform Warehouse Receipts Act, states that a warehouseman may insert in a receipt issued by him, in addition to those provisions required by the Act to be inserted, any other terms and conditions, provided that they are not contrary to the provisions of the Act and provided that such terms and conditions shall not "in anywise impair his obligation to exercise that degree of care in the safekeeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." Thus, a warehouseman, like a common carrier, may not, by contract with his customer, absolve himself from liability for loss of or damage to goods stored in his warehouse, which loss or damage is due to his negligence.

In *Gardner v. R. R., supra,* Douglas, J., speaking for the Court, said:

"It is a well-settled rule of law, practically of universal acceptance, that for reasons of public policy a common carrier is not permitted, even by express stipulation, to exempt itself from loss occasioned by its own negligence. * * * The measure of such liability is necessarily the amount of the loss; and if a common carrier is permitted to stipulate that it shall be liable only for an amount greatly less than the value of the property so lost—that is, for only a small part of the loss—it is thereby exempted *pro tanto* from the results of its own negligence. Such a course, if permitted, would practically evade

the decisions of the courts, and nullify the settled policy of the law. We do not mean to say that there are no cases where a common carrier can make a valid agreement as to the value of the article shipped, but all such agreements must be reasonable, and based upon a valuable consideration."

An agreement limiting the warehouseman's liability for loss or damage to an amount which the warehouseman knows, or in the exercise of ordinary judgment should know, is but a small fraction of the real value of the goods delivered to him, cannot be deemed a reasonable agreement and, even though a smaller charge for storage is made because of the agreement, it cannot be held valid, since it is, by its necessary effect, an agreement limiting the liability of the warehouseman for damages due to his own negligence.

Here, the employees of the warehouseman packed the articles. Consequently, they knew the general nature of them. They were packed in containers which the defendant's president testified were used for breakable articles. The defendant is, therefore, not in the position of a warehouseman who has received containers, packed by another, with no knowledge of the nature and quality of the contents.

One in the business of storing household furnishings must be held to know that a "barrel" of antique silver, fine china and glassware has a value far in excess of $50.00. The so-called agreement between the parties, assuming the plaintiff entered into it, that the value of each such "barrel" or "carton" does not exceed the sum of $50.00, cannot, therefore, be deemed a reasonable effort of the parties to state the true value of the goods stored. On the contrary, it is an arbitrary limitation upon the liability of the defendant for loss or damage due to its negligence.

Furthermore, the plaintiff did not sign a statement that the goods were of a value not in excess of $50.00 per "barrel" or "carton." The statement she signed was: "I acknowledge that the condition of the goods at the time of the loading is as noted on this inventory and that I have received a copy of this inventory." That statement was printed on the front of the receipt, near the bottom, and below a partial list of the articles, cartons, barrels, and other designations of articles stored with the defendant. At the top of the page is a receipt, signed by the defendant, stating, in substance, that it has received the goods enumerated thereafter "upon the Terms and Conditions on the back of this Receipt." On the back of the receipt, in much smaller type than the available space made necessary, are 15 paragraphs of terms and conditions, including the agreement for limited liability. There is no evidence in the

record to show that these terms and conditions were called to the attention of the plaintiff when she signed the statement concerning the condition of her goods "at the time of the loading."

In the absence of any evidence that the plaintiff's attention was directed to the printed statement on the back of the document, concerning the valuation of the goods, her signing of an entirely different statement, upon the front of the paper, is not sufficient evidence to support a finding that she agreed to release the defendant, in whole or in part, from liability for loss or damage to her property caused by its negligence. See: *Insurance Ass'n v. Parker, supra.* The burden of proof is upon the defendant warehouseman to show that the plaintiff made the contract upon which it relies for the limitation of its liability for loss due to its own negligence. While the plaintiff may be held to knowledge and understanding of that which she signed, the statement she signed was so placed upon the document and so worded that it would not, of itself, put her on notice of the printed provision on the back of the paper concerning the valuation of her property.

No error.