ANNE M. FORTSON, Plaintiff-Appellant v. ROSS McCLELLAN, Defendant-Appellee

No. COA98-158

(Filed 15 December 1998)

**Negligence— release—motorcycle training course—public safety interests—release not enforceable**

The trial court erred by granting summary judgment for defendant in a negligence action arising from an accident during a motorcycle training course. Although defendant asserted as a bar a waiver and release which plaintiff was required to sign as a condition of receiving instruction, the same interests in public safety addressed by statute and case law are significantly present in motorcycle safety instruction. Having entered into the business of instructing the public in motorcycle safety, the defendant cannot by contract dispense with the duty to instruct with reasonable safety.

Appeal by plaintiff from order entered 24 November 1997 by Judge Richard B. Allsbrook in Wilson County Superior Court. Heard in the Court of Appeals 21 October 1998.

*Conner, Bunn, Rogerson & Woodard, P.L.L.C., by James F. Rogerson and Elizabeth B. McKinney, for plaintiff-appellant.*

*Barber & Associates, P.A., by Timothy C. Barber and James T. Johnson, for defendant-appellee.*

MARTIN, John C., Judge.

In November of 1994, plaintiff enrolled in a two day motorcycle safety program conducted at Lenoir Community College; defendant was the instructor for the program. As a condition of receiving instruction, plaintiff was required to sign a waiver form stating that she

[h]ereby releases, waives, discharges, and covenants not to sue the North Carolina Motorcycle Safety Program . . . the promoters, other participants, operators, officials, any persons in a restricted area . . . whether caused by the negligence of the releasees or otherwise while the undersigned is . . . participating in the course . . . .

During the second day of the program, in which the participants rode motorcycles in a parking lot, defendant assigned plaintiff a motorcycle which, according to plaintiff's allegations, defendant knew had given another participant problems due to difficulties with the throttle. The throttle malfunctioned while plaintiff was riding the motorcycle, causing it to crash, injuring plaintiff's leg and knee. Plaintiff brought this action for damages, alleging defendant's negligence caused her injuries. Defendant answered, denying negligence, alleging plaintiff's contributory negligence, and asserting the waiver and release as a bar to plaintiff's recovery. Defendant's subsequent motion for summary judgment was granted and plaintiff appeals.

---

Plaintiff contends the trial court erred in granting summary judgment, arguing that the waiver and release was void as against public policy and that there were issues of material fact concerning defendant's negligence. We agree. Accordingly, we reverse the order dismissing plaintiff's claim.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c); *Toole v. State Farm Mut. Auto. Ins. Co.*, 127 N.C. App. 291, 294, 488 S.E.2d 833, 835 (1997). All of the evidence is viewed in the light most favorable to the non-moving party. *Garner v. Rentenbach Constructors Inc.*, 129 N.C. App. 624, 501 S.E.2d 83, 85 (1998). "Where there is no genuine issue as to the facts, the presence of important or difficult questions of law is no barrier to the granting of summary judgment." *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971).

In North Carolina "[r]eleases which exculpate persons from liability for negligence are not favored by the law." *Johnson v. Dunlap*, 53 N.C. App. 312, 317, 280 S.E.2d 759, 763 (1981), *cert. denied*, 305 N.C. 153, 289 S.E.2d 380 (1982); *Alston v. Monk*, 92 N.C. App. 59, 373 S.E.2d 463 (1988); *Miller's Mut. Fire Ins. Ass'n v. Parker*, 234 N.C. 20, 65 S.E.2d 341 (1951). Nonetheless, such an exculpatory contract will be enforced unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest. *Jordan v. Eastern Transit & Storage Co.*, 266 N.C. 156, 146 S.E.2d 43 (1966); *Hall v. Sinclair Refining Co.*, 242 N.C. 707, 89 S.E.2d 396 (1955) (discussing the general rule that parties may contract to allocate the risk of their own negligence, and the circumstances under

FORTSON v. McCLELLAN

[131 N.C. App. 635 (1998)]

which such contracts will be held void); *Miller's Mut. Fire Ins. Ass'n, supra; Brockwell v. Lake Gaston Sales and Service,* 105 N.C. App. 226, 412 S.E.2d 104 (1992).

Plaintiff contends the public policy exception to the general validity of exculpatory contracts applies in this case. "While recognizing the right to contract against liability, our courts have stated 'that a party cannot protect himself by contract[ing] against liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved.' " *Alston v. Monk,* 92 N.C. App. 59, 64, 373 S.E.2d 463, 466 (1988), *disc. review denied,* 324 N.C. 246, 378 S.E.2d 420 (1989) (quoting *Hall v. Refining Co.,* 242 N.C. 707, 710, 89 S.E.2d 396, 398 (1955)). An activity falls within the public policy exception when the activity is extensively regulated to protect the public from danger, and it would violate public policy to allow those engaged in such an activity to "absolve themselves from the duty to use reasonable care." *Id.* In *Alston,* this Court found that hair-styling was such an activity: "[t]he practice of cosmetology and the education of students in this field may affect the health of the general public. Accordingly, we hold that the Institute and its employees may not contract with their customers in a manner that would absolve themselves from their duty to use reasonable care." *Id.*

In the present case, defendant's motorcycle safety training program evokes the same, if not greater, important level of public interest as cosmetology. Important public safety interests are present both in the instruction and use of motorcycles because both those receiving instruction in the proper use of motorcycles and the general traveling population are at risk from negligent training in the use of motorcycles. Trainees, unfamiliar with motorcycles, are particularly vulnerable to hazards associated with improper or negligent training.

Even so, defendant argues the public policy exception does not apply because the motorcycle safety training program is more like a sporting event than a public service. Defendant relies on *Bertotti v. Charlotte Motor Speedway, Inc.,* 893 F.Supp. 565, 566 (W.D.N.C. 1995), for the proposition that "exculpatory contracts entered in connection with motor sports events do not violate public policy because such contracts do not involve public interests." Interpreting our decision in *Johnson v. Dunlap,* 53 N.C. App. 312, 280 S.E.2d 759 (1981), *cert. denied,* 305 N.C. 153, 289 S.E.2d 380 (1982), the *Bertotti* Court stated:

Significantly, the Johnson court did not question that such pre-race releases are enforceable. The court did not characterize the release as an adhesion contract involving unequal bargaining power and did not hold that such contracts involved a public interest. Thus, Johnson strongly implies that when a party has the opportunity to see and read a pre-race exculpatory contract, the agreement is enforceable in North Carolina.

*Id.* at 567.

We disagree with defendant's characterization of the public interests in this case. There is an enormous difference between the situation of professional race car drivers racing around a course designed for that sport, and an inexperienced member of the public seeking training in the safe use of a motorcycle on the public highway. The public interest in minimizing the risks associated with motorcycle use have been recognized in case law and regulated by statute. When upholding the statute requiring safety helmets on motorcycles, G.S. § 20-140.2(b) (now G.S. § 20-140.4), this Court has stated that:

Death on the highway can no longer be considered as a personal and individual tragedy alone. The mounting carnage has long since reached proportions of a public disaster. Legislation reasonably designed to reduce the toll may for that reason alone be sufficiently imbued with the public interests to meet the constitutional test required for a valid exercise of the State's police power. However, it is not necessary to invoke so broad a premise in order to find the statute here attacked to be constitutional.

*State v. Anderson*, 3 N.C. App. 124, 126, 164 S.E.2d 48, 50 (1968), *affirmed*, 275 N.C. 168, 166 S.E.2d 49 (1969). The General Assembly has recognized the special public importance of appropriate motorcycle safety instruction by establishing Motorcycle Safety Instruction Programs. N.C. Gen. Stat. § 115D-72 (1997); *see also* N.C. Gen. Stat. § 20-146.1 (1997) (Operation of Motorcycle); N.C. Gen. Stat. § 20-140.4 (1997) (Special Provisions for Motorcycles and Mopeds). Given the hazards to the public associated with motorcycle instruction, and the extensive regulation of motorcycle use, it would violate public policy to allow instructors in a motorcycle safety instruction course, such as the one operated by defendant, to "absolve themselves from the duty to use reasonable care." *Alston* at 64, 373 S.E.2d at 466.

Despite legislative and judicial statements of public policy concerning motorcycle training and use, defendant still contends the

public policy exception does not apply to this case. Defendant argues that even though motorcycle use is heavily regulated in general, this particular training course was not regulated, and so the circumstances do not infringe upon the public interest. According to his argument, two cases, *Gas House, Inc. v. Southern Bell Tel. & Tel. Co.*, 289 N.C. 175, 221 S.E.2d 499 (1976) and *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 144 S.E.2d 393 (1965), establish that even heavily regulated industries may limit their liability under exculpatory clauses regarding activities outside the scope of their regulation. We do not find these cases to be controlling because the public safety interests involved in the motorcycle safety training course are the same public interests recognized by statute and case law; and, *Gibbs* and *Gas House* were interpreting limitations on liability, not complete exemptions from liability.

*Gibbs* concerned an indemnity agreement whereby a contractor agreed to indemnify the power company for any injuries to contractor's employees not covered by Workers' Compensation laws. The Court found two factors significant when holding that public policy does not bar the enforcement of an otherwise valid indemnification agreement. First, the power company's relation to the contractor "was not in the regular course of its business of furnishing electric current to the public and not in the performance of a duty of public service." *Id.* at 467, 144 S.E.2d at 400. Second, this was an indemnity contract limiting liability, rather than an exculpatory clause completely releasing the power company from all liability.

> There is a distinction between contracts whereby one seeks to wholly exempt himself from liability for the consequences of his negligent acts, and contracts of indemnity against liability imposed for the consequences of his negligent acts. The contract in the instant case is of the latter class and is more favored in law.

*Gibbs*, 265 N.C. at 467, 144 S.E.2d at 400 (Indemnity contracts must be considered in light of public policy; "[h]owever, exculpatory clauses, not involving or relating to duties to the public, are not favored and are to be strictly construed."). As in *Gibbs*, the Court in *Gas House* construed a contract provision limiting liability rather than wholly exempting the party from all liability. *Gas House* at 179, 221 S.E.2d at 502. The present case involves a complete release from liability, rather than an indemnification or reasonable limitation on liability, and so the release must be strictly construed.

Both *Gibbs* and *Gas House* were also concerned with the threat to the public posed by a utility's superior bargaining power, not public safety; therefore, the contracts outside the scope of public service do not implicate the same public interests. *Gas House* involved an action by a yellow pages advertiser against a telephone company to recover damages because of improper classification of advertisement. *Gas House* at 179, 221 S.E.2d at 502. Noting that in the normal course of a telephone utility's service "every member of the public is entitled by law to demand such service with full liability at a reasonable rate therefor," the *Gas House* Court also determined that:

> [t]he inequality of bargaining power between the telephone company and the businessman desiring to advertise in the yellow pages of the directory is more apparent than real. It is not different from that which exists in any other case in which a potential seller is the only supplier of the particular article or service desired. There are many other modes of advertising to which the businessman may turn if the contract offered him by the telephone company is not attractive.

*Gas House* at 184, 221 S.E.2d at 505. The Court's concern in *Gas House* and *Gibbs* regarded the inequality of bargaining power between public utilities and the general public. *Gas House* at 183, 221 S.E.2d at 504; *Gibbs* at 467, 144 S.E.2d at 400. The court would not allow a public utility to use its monopoly power as leverage against the public to obtain a release from all responsibilities connected with the public service. However, when the public utility engaged in "non-public" activity, freedom of contract principles applied, and the public utility's contracts were not limited by public policy. *Gas House, Inc. v. Southern Bell Tel. & Tel. Co.*, 289 N.C. 175, 184, 221 S.E.2d 499, 505 (1976) (no violation of public policy where telephone company contracted with respect to a misplaced advertisement, as it "is not part of a telephone company's public utility business."); *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965) (no violation of public policy where power company contracted to limit liability with construction company, as it was "not in the performance of a duty of public service."). The North Carolina Supreme Court subsequently overruled its statement in *Gas House* that "[t]he business of carrying advertisements in the yellow pages of its directory is not part of a telephone company's public utility business." *State, ex rel., Utilities Commission v. Southern Bell Tel. & Tel. Co.*, 307 N.C. 541, 547, 299 S.E.2d 763, 766 (1983) ("To the extent

that the language in *Gas House* is inconsistent with our holding in the case *sub judice* that language is overruled.").

In this case, we are faced with a different public interest, i.e., public safety as opposed to inequality of bargaining power, and a complete release from liability. Having entered into the business of instructing the public in motorcycle safety, the defendant cannot, by contract, dispense with the duty to instruct with reasonable safety. *See cf., Jordan v. Eastern Transit & Storage Co.*, 266 N.C. 156, 146 S.E.2d 43 (1966) (holding that having entered into the business of carrying and protecting property, bailees and common carriers cannot arbitrarily limit their liability); *Miller's Mut. Fire Ins. Ass'n v. Parker*, 234 N.C. 20, 65 S.E.2d 341 (1951); *Brockwell v. Lake Gaston Sales and Service*, 105 N.C. App. 226, 412 S.E.2d 104 (1992). The same interests in public safety addressed by statute and case law are significantly present in motorcycle safety instruction. We hold, under the circumstances of this case, a pre-safety training release of liability for injuries caused by the negligence of the instructor is not enforceable.

Because plaintiff's claim is not barred by the purported waiver, and the pleadings and other materials before the trial court raise genuine questions of material fact with respect to negligence issues, summary judgment was inappropriate. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983); *Easter v. Lexington Memorial Hospital, Inc.*, 303 N.C. 303, 278 S.E.2d 253 (1981); *Vassey v. Birch*, 301 N.C. 68, 73, 269 S.E.2d 137, 140 (1980) ("[I]t is only in exceptional negligence cases that summary judgment is appropriate because the rule of the prudent man, or other applicable standard of care, must be applied, and ordinarily the jury should apply it under appropriate instructions from the court.") The trial court's order granting summary judgment is reversed and this case is remanded for further proceedings.

Reversed and remanded.

Judges TIMMONS-GOODSON and HORTON concur.