**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1129**

DEBRA ROSE MCMURRAY,

             Plaintiff - Appellant,

      v.

UNITED STATES OF AMERICA,

             Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  James C. Dever III, Chief District Judge.  (4:12-cv-00086-D)

Argued:  October 31, 2013              Decided:  January 7, 2014

Before TRAXLER, Chief Judge, and KING and THACKER, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Mark A. Sternlicht, BEAVER, HOLT, STERNLICHT & COURIE, PA, Fayetteville, North Carolina, for Appellant.  Joshua Bryan Royster, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Thomas G. Walker, United States Attorney, R.A. Renfer, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Debra Rose McMurray was a passenger in a vehicle being driven by Michael Rumfalo, a recruiter for the United States Marine Corps. McMurray sustained serious injuries when Rumfalo ran a red light and collided with another car, and she subsequently filed suit against the United States under the Federal Tort Claims Act ("FTCA"). The district court granted summary judgment in favor of the United States, and McMurray appeals. We vacate the judgment of the district court and remand for further proceedings.

I.

The Marine Corps occasionally conducts workshops for teachers and other educational professionals at its facility on Parris Island, South Carolina. The workshops give the educators valuable information about the Corps and the opportunity to experience first-hand some elements of basic training.

McMurray, a guidance counselor at a high school near Fayetteville, North Carolina, frequently counsels students who are deciding whether to join the military or which branch of the military would be a good fit. Interested in attending one of the workshops, McMurray contacted Rumfalo, the Marine Corps recruiter she knew from school. Rumfalo told McMurray that a workshop would be held on March 29 through April 2, 2010, and he forwarded her the necessary paperwork to be completed in order

2

to attend.  The paperwork included a "Release and Hold Harmless Agreement" (the "Release") that released the government from liability for any injuries arising out of participation in the workshop, including "riding in government-provided transportation (to include transportation to and from the Educator's Workshop)."  J.A. 15.

When Rumfalo came to pick up the paperwork from McMurray, she had not yet completed the Release.  She asked Rumfalo if she would be allowed to participate if she did not sign the Release and was told that "everyone has to sign [the Release] to participate."  J.A. 18.  McMurray also asked Rumfalo if she could drive herself to Raleigh to meet the bus that would take them to Parris Island, rather than being picked up at her house and driven to Raleigh by Rumfalo.  The answer to that question was also "no," an answer that "made it clear" to McMurray that she "could not negotiate the terms of [her] participation in the Workshop."  J.A. 19.  McMurray therefore signed the Release and attended the workshop.

After the workshop, a Marine Corps bus brought the workshop attendees back to Raleigh.  Rumfalo was there, waiting to drive McMurray and an attendee from Fayetteville back to their homes.  While still in Raleigh, Rumfalo ran a red light and collided with a car that had the right-of-way.  McMurray suffered serious injuries, including a traumatic brain injury.  McMurray missed

work for the remainder of the 2010 school year and through the entire summer as well. Her medical bills and lost wages exceed $48,000.

McMurray thereafter commenced this action under the FTCA. The district court granted summary judgment in favor of the government, concluding that the Release was enforceable under North Carolina law and that it barred McMurray's claims against the government. This appeal followed.

## II.

The FTCA provides a limited waiver of sovereign immunity for torts committed by federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "In other words, a claimant has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances. Thus, the substantive law of each state establishes the cause of action." Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011) (citation and internal quotation marks omitted).

The act or omission at issue here took place in North Carolina, and the substantive law of North Carolina therefore governs McMurray's FTCA claim. The sole issue on appeal is the

4

enforceability of the Release. If North Carolina law would enforce the Release had it been executed in favor of a private person, then we must likewise enforce the Release as barring McMurray's claim. See id. ("[S]ubstantive state law establishes -- and circumscribes -- FTCA causes of action."). When resolving that issue, this court "must rule as the North Carolina courts would, treating decisions of the Supreme Court of North Carolina as binding, and departing from an intermediate court's fully reasoned holding as to state law only if convinced that the state's highest court would not follow that holding." Iodice v. United States, 289 F.3d 270, 275 (4th Cir. 2002) (internal quotation marks and alteration omitted).

III.

A.

Although contracts seeking to release a party from liability for his own negligence "are not favored by the law," such contracts are generally enforceable. Hall v. Sinclair Refining Co., 89 S.E.2d 396, 397 (N.C. 1955). Exculpatory clauses or contracts, however, "are void and unenforceable" where the "contractual provisions [are] violative of the law or contrary to some rule of public policy," or where a party to the contract has unequal bargaining power and "must either accept what is offered or forego the advantages of the contractual relation in a situation where it is necessary for him to enter

5

into the contract to obtain something of importance to him which for all practical purposes is not obtainable elsewhere." Id. at 398; see Fortson v. McClellan, 508 S.E.2d 549, 551 (N.C. Ct. App. 1998) ("[A]n exculpatory contract will be enforced unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest.").

McMurray contends that each of the exceptions to the general rule of enforceability applies in this case. She argues that the release is unenforceable under the violation-of-statute exception because the Release is inconsistent with North Carolina's red-light statute. See N.C. Gen. Stat. § 20-158(b)(2) ("When a traffic signal is emitting a steady red circular light controlling traffic approaching an intersection, an approaching vehicle facing the red light shall come to a stop and shall not enter the intersection. . . ."). She further argues that the Release is unenforceable under the unequal-bargaining-power exception because the educator's workshop provided information and experience important to her as a guidance counselor that could not be replicated elsewhere and she lacked the ability to negotiate the terms of her attendance. As to the public-policy exception, McMurray contends that operating motor vehicles on public roads is a dangerous and heavily regulated activity. Given the significant public

interests at stake, McMurray argues that it would violate public policy to permit drivers to absolve themselves of the duty to exercise reasonable care when driving. We need not consider McMurray's arguments under the violation-of-statute or unequal-bargaining-power exceptions, because we agree that the public-policy exception renders the Release unenforceable.

B.

As explained by the Supreme Court of North Carolina, the public-policy exception prohibits a person from contracting to protect himself from "liability for negligence in the performance of a duty of public service, or where a public duty is owed, or public interest is involved, or where public interest requires the performance of a private duty." Hall, 89 S.E.2d at 398 (emphasis added; internal quotation marks omitted). We think it clear that an important public interest is involved in this case -- the public's interest in safe streets and safe driving.

There can be no dispute that driving on public roads is a dangerous activity, as North Carolina courts have repeatedly recognized. See Williams v. Henderson, 55 S.E.2d 462, 463 (N.C. 1949) ("A motorist operates his vehicle on the public highways where others are apt to be. . . . Should he lapse into a state of carelessness or forgetfulness his machine may leave death and destruction in its wake."). Accordingly, in North Carolina, as

7

elsewhere, numerous statutes, regulations, and cases spell out the rules of the road and the duties of a driver. And as the case law makes clear, the point of these rules and regulations is to protect not merely the driver and his passengers, but to protect the safety of the public:

> Our motor traffic regulations are not intended merely to protect those who are using the highways. They are designed to protect the life, limb, and property of any and every person on or about the highway who may suffer injury to his person or damage to his property as a natural and proximate result of the violation thereof.

Aldridge v. Hasty, 82 S.E.2d 331, 337 (N.C. 1954) (emphasis added); see also State v. Anderson, 164 S.E.2d 48, 50 (N.C. Ct. App. 1968) ("Death on the highway can no longer be considered as a personal and individual tragedy alone. The mounting carnage has long since reached proportions of a public disaster."), aff'd, 166 S.E.2d 49 (N.C. 1969). We therefore conclude that, under North Carolina law, there is a strong public-safety interest in careful driving and the observance of all traffic-related rules and regulations. Permitting the government to absolve itself of the duty to exercise reasonable care when driving puts members of the public at great risk and is contrary to that strong public interest.

The district court, however, held -- and the Government argues on appeal -- that the public-policy exception applies only to "'entities or industries that are heavily regulated.'"

8

J.A. 25 (quoting Bertotti v. Charlotte Motor Speedway, Inc., 893 F. Supp. 565, 569 (W.D.N.C. 1995)). In the district court's view, the activity of driving is not heavily regulated (at least where no common carriers are involved), such that the enforcement of the Release would not "contradict a substantial public interest." J.A. 27.

As an initial matter, we question the correctness of the district court's determination that the public-policy exception is limited to cases involving heavily regulated entities or activities. North Carolina courts have applied the public-policy exception to invalidate exculpatory contracts and clauses executed under widely varying circumstances, not all of which can be said to involve heavily regulated entities or activities. See Fortson, 508 S.E.2d at 551-52 (invalidating release signed as condition of participation in motorcycle-safety training program); Alston v. Monk, 373 S.E.2d 463, 467 (N.C. Ct. App. 1988) (invalidating release signed by customer having hair colored by student of cosmetology school); Brockwell v. Lake Gaston Sales & Serv., 412 S.E.2d 104, 106 (N.C. Ct. App. 1992) (invalidating clause in boat-repair contract that purported to relieve mechanic of liability for negligence that led to theft of personal property contained in boat). While the practice of cosmetology may be heavily regulated, teaching motorcycle safety or repairing boats is not, yet the releases in Fortson and

9

<u>Brockwell</u> were still invalidated under the public-policy exception.

In our view, the <u>Hall</u> court's formulation of the exception, with its focus on public service, public duty, and public interest, <u>see</u> <u>Hall</u>, 89 S.E.2d at 398, makes it clear that the public-policy exception turns not on the level of regulation, but on the presence or absence of a <u>public interest</u> in the transaction at issue. The actual application of the exception by the North Carolina courts confirms this view -- the courts enforce exculpatory clauses where no public interest is at stake, without regard to whether the entity seeking protection is regulated. <u>See</u> <u>Gibbs v. Carolina Power & Light Co.</u>, 144 S.E.2d 393, 400 (N.C. 1965) ("Even a public service corporation is protected by an exculpatory clause <u>when the contract is casual and private and in no way connected with its public service</u>." (emphasis added)); <u>Fortson</u>, 508 S.E.2d at 553 ("[W]hen [a] public utility engage[s] in non-public activity, freedom of contract principles appl[y], and the public utility's contracts [are] not limited by public policy." (internal quotation marks omitted)); <u>see also</u> <u>Blaylock Grading Co. v. Smith</u>, 658 S.E.2d 680, 683 (N.C. Ct. App. 2008) (enforcing exculpatory clause in land-surveying contract despite regulation of surveying industry because "the limitation on liability in the contract at issue does not implicate the public health or safety"); <u>Sylva Shops</u>

10

Ltd. P'ship v. Hibbard, 623 S.E.2d 785, 790, 792 (N.C. Ct. App. 2006) (enforcing exculpatory clause in commercial lease not because relationship was not heavily regulated, but because exculpatory clause at issue "[did] not create a risk of injury to the public or the rights of third parties" and therefore "[did] not affect the public interest").

Heavy regulation of an activity or entity may well reflect the presence of an important public interest that precludes enforcement of an exculpatory clause. See Fortson, 508 S.E.2d at 551 ("An activity falls within the public policy exception when the activity is extensively regulated to protect the public from danger, and it would violate public policy to allow those engaged in such an activity to absolve themselves from the duty to use reasonable care." (internal quotation marks omitted)). Nonetheless, we do not read the relevant North Carolina cases as requiring heavy regulation of the activity or entity before the public-policy exception may be invoked.[1]

The government also contends driving is not the kind of activity that would justify application of the public-policy

---

[1] In any event, even if heavy regulation were required under North Carolina law, it is apparent that driving on public roads is a heavily regulated activity, with numerous statutes and regulations establishing the requirements for getting and keeping a license to drive on public roads, and setting out the driver's obligations under various circumstances.

11

exception. We disagree. In our view, the public-safety interest at stake in this case is at least as important as the safety interests involved in motorcycle instruction, see Fortson, 508 S.E.2d at 552, or the practice of cosmetology, see Alston, 373 S.E.2d at 467, and significantly more important that the public interest in the safeguarding of a boat while under repair, see Brockwell, 412 S.E.2d at 106. Moreover, the government's argument in this regard is largely foreclosed by the North Carolina Court of Appeals' decision in Fortson.

In Fortson, the plaintiff executed a release when signing up for a two-day motorcycle safety program and was injured when the motorcycle she was assigned malfunctioned. The court found the release unenforceable under the public-policy exception. To reach its conclusion, the court focused on the risks associated with motorcycle use and the public-safety interest "in minimizing the risks associated with motorcycle use," an interest that is "recognized in case law and regulated by statute." Id. at 552 (emphasis added).[2] In the court's view,

---

[2] As an example of a case recognizing the public interest in minimizing the risks of motorcycle use, the Fortson court cited to State v. Anderson, 164 S.E.2d 48 (N.C. Ct. App. 1968), a case which upheld North Carolina's helmet law as valid exercise of police powers because the law bore "a substantial relation to the promotion of the welfare and safety of the general public as distinguished from the welfare solely of the individual riders of motorcycles." Id. at 50 (emphasis added).

12

the "same interests in public safety" addressed by the cases and statutes involving motorcycle use "are significantly present in motorcycle safety instruction," id. at 554 (emphasis added), and the court therefore found the release unenforceable: "Given the hazards to the public associated with motorcycle instruction, and the extensive regulation of motorcycle use, it would violate public policy to allow instructors in a motorcycle safety instruction course, such as the one operated by defendant, to absolve themselves from the duty to use reasonable care." Id. at 552.

The Fortson court's analysis is thus premised on an implicit determination that the public-safety interest in the safe use of motorcycles is substantial enough to invalidate a release implicating that interest. If the public interest in the safe use of motorcycles is enough to invalidate a release, then the public interest in the safe use and operation of cars is likewise enough.

IV.

As the North Carolina courts have made clear, every driver owes the public the duty to exercise due care when driving on public roads; the failure to exercise due care puts people and property at great risk. See Aldridge, 82 S.E.2d at 337; Williams, 55 S.E.2d at 463. Careless driving exposes the public, not merely the driver and his passenger, to great

13

danger, and the Release therefore cannot be viewed as a simple private contract that should be enforced according to its terms. See Blaylock Grading Co., 658 S.E.2d at 683; Sylva Shops, 623 S.E.2d at 790.

Accordingly, we conclude that, under the circumstances of this case, it would violate public policy to permit the government to "absolve [itself] from the duty to use reasonable care" when driving. Fortson, 508 S.E.2d at 552; cf. Sylva Shops, 623 S.E.2d at 790 ("Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good."). Because the Release is unenforceable under North Carolina law, we vacate the district court's order granting summary judgment in favor of the government, and we remand for further proceedings on McMurray's FTCA claim.

VACATED AND REMANDED

14