**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 14-1163**

---

SYNOVUS BANK; NATIONAL BANK OF SOUTH CAROLINA,

> Plaintiffs - Appellees,

> v.

KEVIN J. TRACY; PATRICIA M. TRACY,

> Defendants – Appellants,

> and

BENJAMIN W. ATKINSON; DANIEL S. HINKSON; KATHERINE H. WILLIAMS; ANTHONY J. BARBIERI,

> Defendants.

---

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, District Judge. (1:10-cv-00172-MR-DLH)

---

Submitted: January 30, 2015          Decided: March 2, 2015

---

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Edward L. Bleynat, Jr., H. Gregory Johnson, FERIKES & BLEYNAT, PLLC, Asheville, North Carolina, for Appellants. Thomas William McGee, III, A. Mattison Bogan, Sarah B. Nielsen, Tara C. Sullivan, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia,

South Carolina, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kevin Tracy and his mother, Patricia Tracy (collectively "Appellants"), appeal the district court's order dismissing Patricia Tracy's counterclaims and dismissing in part Kevin Tracy's counterclaims as well as the final amended judgment in favor of the National Bank of South Carolina and its successor-in-interest, Synovus Bank (the "Bank"). Patricia contends that the release of her claims was unenforceable because it was obtained through unequal bargaining power and is contrary to public policy. Kevin argues that the district court erroneously dismissed his claims under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 to 1720 (2012) ("ILSA") and his state-law negligent misrepresentation claims. He further contends that summary judgment was inappropriate on his state-law claims of common law fraud and under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1 to 75-145 (2014) ("UDTPA"). Finally, Appellants argue that the Bank was precluded from enforcing the promissory notes due to fraud and a failure to act in good faith. After careful review of the record, we affirm.

I.

We review de novo a district court's order dismissing a complaint for failure to state a claim, assuming that all well-pleaded nonconclusory factual allegations in the complaint

3

are true.  Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011).  While we must accept the material facts alleged in the complaint as true, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see also Francis v. Giaconnelli, 588 F.3d 186, 193 (4th Cir. 2009).

Appellants first challenge the district court's order dismissing Patricia's claims based on the release signed as part of her loan modification agreement, arguing that the Bank secured the release by exploiting its unequal bargaining power and that the release is contrary to public policy.  Under North Carolina law, "an exculpatory contract will be enforced unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest."  Fortson v. McClellan, 508 S.E.2d 549, 551 (N.C. Ct. App. 1998).  In applying the unequal bargaining power exception, a court must consider "whether one of the parties . . . must either accept what is offered or forego the advantages of the contractual relation in a situation where it is necessary for him to enter into the contract to obtain something of importance to him which for all practical purposes is not obtainable elsewhere."  Hall v. Sinclair Ref. Co., 89 S.E.2d 396, 398 (N.C. 1955).  "An activity falls within the public policy exception when the activity is extensively regulated to protect the public

4

from danger, and it would violate public policy to allow those engaged in such an activity to absolve themselves." Hyatt v. Mini Storage on Green, 763 S.E.2d 166, 171 (N.C. Ct. App. 2014) (internal quotation marks omitted).

We conclude that the release is an enforceable waiver of Patricia's claims. Patricia purchased the property as an investment and was not unable to walk away from the transaction at the time she modified the original loan. Although she claims the Bank used high-pressure tactics to convince her to re-finance, she has not identified what these tactics were or how they resulted in unequal bargaining power. Finally, as the district court concluded, allowing two contracting parties to agree to this release in a contract involving refinancing on investment properties does not implicate a substantial public interest.

Next, Kevin argues that the district court erred when it concluded that the Bank was not a developer under ILSA. Congress enacted ILSA "to ensure that prior to purchasing certain types of real estate, a buyer is apprised of the information needed to make an informed decision." Nahigian v. Juno-Loudoun, 677 F.3d 579, 587-88 (4th Cir. 2012) (alteration and internal quotation marks omitted). "[T]he language of [ILSA] should be read broadly to effectuate its goal of protecting purchasers of land which is part of a common

5

promotional scheme." In re Total Realty Mgmt., 706 F.3d 245, 251 (4th Cir. 2013) (alteration and internal quotation marks omitted).

A developer, for purposes of ILSA, includes "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. § 1701(5) (2012). ILSA prohibits a developer from "employ[ing] any device, scheme, or artifice to defraud" or "engag[ing] in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser" in relation to the sale or lease of a covered lot. 15 U.S.C. § 1703(a)(2)(A), (C) (2012). These provisions "encompass[] entities that participated in the advertising and promotion efforts leading to a challenged real estate transaction, even if they ultimately were not party to the transaction." In re Total Mgmt., 706 F.3d at 253.

We conclude that Kevin failed to sufficiently allege that the Bank was a developer. The facts alleged in the complaint state simply that a loan officer with the Bank participated in events related to the sale of lots in the development and that loan officer informed Kevin that purchasing the lot was a "good investment." The conversations between Kevin and the loan officer focused on the Bank's lot loan program; the officer's isolated statement, without more, does

6

not indicate that the Bank was sufficiently involved in the advertising or sale of the lots such that it is subject to ILSA.

Finally, Kevin challenges the district court's dismissal of his negligent misrepresentation claim. Under North Carolina law,[1] "the tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." Walker v. Town of Stoneville, 712 S.E.2d 239, 244 (N.C. Ct. App. 2011) (alteration and internal quotation marks omitted). "A duty is defined as an obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks." Oberlin Capital, L.P. v. Slavin, 554 S.E.2d 840, 846 (N.C. Ct. App. 2001). However, "the home loan process is regarded as an arm's length transaction between parties of equal bargaining power and, absent exceptional circumstances, will not give rise to a fiduciary duty." Dallaire v. Bank of Am., N.A., 760 S.E.2d 263, 264 (N.C. 2014); see Fazzari v. Infinity Partners, 762 S.E.2d 237, 242 (N.C. Ct. App. 2014).

---

[1] In light of the district court's diversity jurisdiction, North Carolina substantive law governs Kevin's negligent misrepresentation, fraud, and UDTPA claims. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938).

7

We conclude that Kevin's allegations failed to establish the exceptional circumstances necessary to create a duty of care. The isolated statements that the purchase was a "good investment," made during conversations about the Bank's loan terms and the incentive program offered by the Bank, are insufficient to establish that the loan officer stepped outside the normal creditor-debtor relationship to create a duty of care. Furthermore, North Carolina courts have rejected similar claims in related circumstances. See Dallaire, 760 S.E.2d t 267 ("A loan officer's mere assertion [regarding the priority of the potential loan] is insufficient to take the parties' relationship out of the borrower-lender context."); Fazzari, 762 S.E.2d at 242-43 (holding that allegations that "the lenders . . . went beyond the role of commercial lending when they acted as 'cheerleaders' and 'promotors'" through falsified appraisals and loan documents were insufficient to establish "exceptional circumstances outside the normal creditor-debtor relationship").

## II.

We review de novo whether a district court erred in granting summary judgment, viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact

8

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party sufficiently supports its motion for summary judgment, the nonmoving party must demonstrate "that there are genuine issues of material fact." Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008).

Kevin first argues that the district court erroneously granted the Bank's motion for summary judgment on his fraud claim, asserting that the loan officer's statements were actionable fraud. Under North Carolina law, the essential elements of fraud are: "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Additionally, plaintiff's reliance on any misrepresentations must be reasonable." Folmar v. Kesiah, 760 S.E.2d 365, 368 (N.C. Ct. App. 2014) (alteration omitted). Generally, a "statement of opinion . . . cannot be the basis of a cause of action for fraud." Leftwich v. Gaines, 521 S.E.2d 717, 722 (N.C. Ct. App. 1999) (internal quotation marks omitted). Such a statement can support a fraud claim, however, "if, at the time it is made, the maker of the statement holds an opinion contrary to the opinion he or she expresses, and . . . intends to deceive the listener." Id. at 723.

9

We conclude that the loan officer's statements were statements of opinion that were not actionable, and that no reasonable fact finder could conclude that Kevin relied on these statements. The loan officer's beliefs about the propriety of Kevin's investment reflect his opinion thereof, and the undisputed evidence shows that he believed the statements to be true at the time they were made. Further, Kevin concluded that the development was a high-end development in a desirable location after researching the area, reviewing the marketing material, and viewing pictures of the development; no reasonable fact finder could have concluded that he decided to invest based upon the loan officer's opinion.

Kevin next argues that the district court improperly granted the Bank summary judgment on his UDTPA claims. In order to establish a claim under the UDTPA, a plaintiff must demonstrate: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[]." In re Fifth Third Bank, Nat'l Ass'n—Vill. of Penland Litig., 719 S.E.2d 171, 176 (N.C. Ct. App. 2011). A plaintiff is not required to prove "fraud, bad faith, deliberate acts of deception or actual deception, but must show that the acts had a tendency or capacity to mislead." Spartan Leasing v. Pollard, 400 S.E.2d 476, 482 (N.C. Ct. App. 1991). However, "only practices involving 'some type of egregious or

10

aggravating circumstances' are sufficient to violate the [UDTPA]." S. Atl. Ltd. P'Ship of Tenn. v. Riese, 284 F.3d 518, 535 (4th Cir. 2002) (internal alteration omitted) (quoting Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)).

We conclude that summary judgment was proper. First, Kevin's fraud-based UDTPA claims failed for the reasons discussed above. Next, he has failed to establish any egregious or aggravating circumstances for his remaining claim based on the Bank's relationship with the development. The Bank's advertisement highlighted the benefits of seeking a lot loan and eventual mortgage through the Bank and its affiliate company.

Finally, Appellants contend that the Bank was not entitled to enforce the promissory notes because it failed to perform its contractual duties in good faith and fraudulently induced Appellants to execute the notes. Under South Carolina law,[2] "[e]very contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." S.C. Code Ann. § 36-1-304 (2014). This section imposes an obligation to act in good faith when a party to the contract "perform[s] or enforce[s] . . . a specific duty or obligation under the contract." Id. § 36-1-304 official cmt. 1.

---

[2] The promissory notes stated that South Carolina law governed.

11

While Appellants generally assert that the Bank's fraudulent actions were the antithesis of good faith, they have not identified how the Bank acted in bad faith in its performance and enforcement of the notes. Further, Appellants' fraud defenses fail for the reasons discussed above. Accordingly, because Appellants have not disputed that the Bank established that the promissory notes were correctly presented and in its possession; that they executed the documents; and that they were in default, we conclude that summary judgment was properly awarded in favor of the Bank.

## III.

Accordingly, we affirm the district court's orders and judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before this court and argument will not aid the decisional process.

AFFIRMED

12