ATLANTIC CONTRACTING AND MATERIAL COMPANY, INC. Plaintiff v. CHARLES N. ADCOCK, Individually, d/b/a ADCOCK'S CONSTRUCTION COMPANY, Defendant

No. COA02-1087

(Filed 18 November 2003)

## 1. Bailments— construction equipment parked on property— degree of control

Summary judgment should not have been granted for defendant on a bailment claim arising from an arrangement by which road construction equipment was parked on defendant's property for a time after a project was finished. The critical question is the degree of control over the equipment by defendant, and here there was a genuine issue of fact.

## 2. Bailments— stored equipment—breach of agreement— summary judgment

Summary judgment should not have been granted for defendant on the issue of breach of a bailment contract where there was evidence that the equipment stored on defendant's property had been damaged, defendant's employee admitted moving it, and defendant admitted that no one else could have moved it.

**3. Bailments— indemnification clause—not exculpatory**

  The trial court erred to the extent that it based summary judgment for defendant in a bailment claim on an indemnification clause in the parties' agreement. The clause was not an exculpatory agreement because it lacked the necessary explicit language, and indemnity applies to third parties.

**4. Damages and Remedies— punitive damages—summary judgment**

  Summary judgment was correctly granted for defendant on a punitive damages claim in a bailment action. The evidence may rise to negligence, but falls short of fraud, malice, or willful or wanton conduct.

Appeal by plaintiff from judgment entered 13 March 2002 by Judge James C. Spencer, Jr. in Granville County Superior Court. Heard in the Court of Appeals 21 May 2003.

*John H. Pike, for plaintiff-appellant.*

*Edmundson & Burnette, L.L.P., by J. Thomas Burnette, for defendant-appellee.*

GEER, Judge.

Plaintiff Atlantic Contracting and Material Co., Inc. ("Atlantic") appeals from the trial court's grant of defendant Charles N. Adcock's motion for summary judgment as to Atlantic's claims for breach of bailment, unfair and deceptive trade practices, and punitive damages. We conclude that genuine issues of material fact exist as to whether the parties entered into a bailment relationship and the trial court erred in granting summary judgment as to Atlantic's first claim for relief for breach of bailment. The trial court properly granted summary judgment as to Atlantic's claims for unfair and deceptive trade practices and punitive damages. We thus affirm in part and reverse in part.

On review of a grant of summary judgment, this Court must review the whole record to determine (1) whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) whether the moving party is entitled to judgment as a matter of law. *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd per curiam*, 353 N.C. 445, 545

S.E.2d 210 (2001). As stated by this Court, "[t]he moving party bears the burden of establishing the lack of a triable issue of fact. The motion must be denied where the non-moving party shows an actual dispute as to one or more material issues." *Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 681, 535 S.E.2d 357, 361 (citations omitted), *app. dismissed and disc. review denied*, 353 N.C. 265, 546 S.E.2d 101 (2000). The non-movant may not "rest upon the allegations of its pleading to create an issue of fact, even though the evidence must be interpreted in a light favorable to the non-movant." *Smiley's Plumbing Co., Inc. v. PFP One, Inc.*, 155 N.C. App. 754, 761, 575 S.E.2d 66, 70, *disc. review denied*, 357 N.C. 166, 580 S.E.2d 698 (2003).

---

In 1998, Atlantic was hired to place new concrete pavement on the northbound lane of I-85 near Oxford, North Carolina. Upon completion of the contract, Atlantic needed a location to store its paving equipment. Adcock owned a 12 1/2 acre lot on Highway 96. John Madden, Atlantic's President, drafted a document entitled a "Lease Agreement" that provided:

Conditions of the rental are as follows:

1. For and in the consideration of $1.00 and more, Charles N. Adcock Jr. and Adcock's Construction Co. agree to lease property located on Route 96, Granville County, at Adcock's Equipment Shop to Atlantic Contracting & Material Co., Inc. for the purpose of storing Atlantic's equipment as removed from the project site at I-85, Oxford, North Carolina.

2. The term of this lease shall commence immediately and continue for an indefinite period.

Atlantic and Adcock signed this agreement ("the Agreement") on 28 October 1998. Madden testified in his deposition that Atlantic exchanged concrete aggregate left over from the I-85 project and worth over $8,000.00 "in return for the use of the property . . . ."

Atlantic moved its paving equipment to Adcock's property in the fall of 1998. Adcock's property did not have a fence around it, but at some unspecified time he built a locked gate across the driveway onto the lot.

According to Madden, Atlantic did not go back to Adcock's property until 2000 when Madden sent a representative of his company, Dennis Barlow, to retrieve the paving equipment. Although Adcock

stated during his deposition that once and a while "that company would come get whatever they wanted[,]" Madden testified that Atlantic had no other jobs in North Carolina between 1998 and 2000. Dennis Barlow submitted an affidavit in which he stated that he returned to Adcock's lot on 26 July 2000. He found that Atlantic's equipment had been moved more than 100 yards from its original location to a low-lying area near a stream bed. Barlow's affidavit asserts that the equipment could not have been moved without the use of heavy equipment. According to Barlow, he spoke with Adcock's employee Dennis Bridges on 27 July 2000, who told him that Adcock had directed him to use Adcock's heavy equipment to move Atlantic's property. The paving equipment was badly damaged and required substantial repair.

Atlantic filed a claim against Adcock for breach of bailment on the grounds that defendant "maliciously, intentionally, and/or grossly negligently damaged" plaintiff's paving equipment and materials. Atlantic also claimed that Adcock committed unfair and deceptive trade practices that damaged plaintiff in an amount in excess of $10,000.00. Finally, Atlantic requested punitive damages. After filing both an answer and an amended answer, defendant moved for summary judgment. Atlantic appeals from the trial court's order granting that motion.

I

[1] With respect to Atlantic's claim for breach of bailment, the first question presented by this appeal is whether the parties entered into a bailment relationship. Atlantic, as the purported bailor, had the burden of establishing the existence of a bailor-bailee relationship. *Flexon Fabrics, Inc. v. Wicker Pick-up and Delivery Service, Inc.*, 39 N.C. App. 443, 447, 250 S.E.2d 723, 725 (1979). Nevertheless, "[r]egardless of who has the burden of proof at trial, upon a motion for summary judgment the burden is on the moving party to establish that there is no genuine issue of fact remaining for trial and that he is entitled to judgment as a matter of law." *Marlowe v. Piner*, 119 N.C. App. 125, 127, 458 S.E.2d 220, 222 (1995). Further, "[u]ntil the moving party makes a conclusive showing, the non-moving party has no burden to produce evidence." *Id.* at 128, 458 S.E.2d at 222.

In arguing that the trial court properly granted summary judgment, defendant relies solely on the parties' assertion in the Agreement that they were entering into a "lease." Courts are not, however, bound by the description that the parties have given a rela-

tionship, but rather must independently determine the "essential character" of that relationship. *Szabo Food Service, Inc. v. Balentine's, Inc.*, 285 N.C. 452, 461, 206 S.E.2d 242, 249 (1974). " 'The construction put upon the contract by the parties is entitled to consideration in determining its true meaning, but they cannot, by giving a name to it, change its legal effect.' " *Id.* (quoting *Guy v. Bullard*, 178 N.C. 228, 230, 100 S.E.2d 328, 329 (1919)).

This Court has previously held that "[a] bailment is created upon the delivery of possession of goods and the acceptance of their delivery by the bailee." *Flexon Fabrics*, 39 N.C. App. at 447, 250 S.E.2d at 726. "Delivery" is defined as the bailor's "relinquishing exclusive possession, custody, and control to the bailee . . . ." *Id.*

Our Supreme Court distinguished a bailment from a license or lease in *Freeman v. Myers Auto. Serv. Co.*, 226 N.C. 736, 40 S.E.2d 365 (1946):

> To constitute a bailment the bailee must have assumed the custody and possession of the property for another, and if there was only permission given, though for a reward, to park at any convenient place in the lot, without any assumption of dominion over the property or custody of it in any respect, the status created was a mere license. *If a designated place on the lot was assigned to the owner of the car the status was that of a lease*, but the status of bailment was not created under either circumstance. A bailment is not created unless there is a delivery to and an acceptance of possession of the article by the bailee.

*Id.* at 737, 40 S.E.2d at 366 (emphasis added). In concluding that the plaintiff had failed to establish that parking her car in a lot pursuant to a monthly contract constituted a bailment as opposed to a license, the Court relied upon evidence that the defendant gave the plaintiff permission generally to occupy space in its parking lot, that the plaintiff customarily took her keys with her, and that when she wanted to take her car from the lot, she would look for it herself. *Id.* at 737-38, 40 S.E.2d at 366-67.

Here, the parties entered into the Agreement "for the purpose of storing Atlantic's equipment as removed from the project site at I-85, Oxford, North Carolina." The record contains no evidence that the parties agreed upon a specific location at Adcock's lot where the equipment would be stored or that Atlantic had exclusive possession and control of a portion of Adcock's premises. *See* 8A Am. Jur. 2d

*Bailments* § 19 (1997) ("However, unlike a bailor, a tenant has exclusive possession and control of the portion of the other party's premises where the goods are kept for the duration of the term of the lease."). In fact, defendant offered evidence that Adcock felt free to move the equipment from its initial location to another spot a significant distance away. Under *Freeman*, a jury could find that the relationship of Adcock and Atlantic was not necessarily landlord and tenant. This conclusion does not, however, resolve whether the record contains sufficient evidence to support a jury finding that a bailment relationship existed.

The delivery of personal property for "storage" purposes, as provided in the Agreement, may give rise to a bailment. *See, e.g., AB Recur Finans v. Nordstern Ins. Co. of N. Am.*, 130 F. Supp. 2d 596, 599 (S.D.N.Y. 2001) (quoting 9 N.Y. Jur. 2d *Bailments and Chattel Leases* § 4) (" 'The acceptance of custody of personal property by a warehouse for safekeeping or storage is a bailment.' "); 8A Am. Jur. 2d *Bailments* § 5 (1997) (transactions constituting bailments include "the delivery and acceptance of custody of personal property for safekeeping, transportation, or storage."). While the agreed upon purpose of storage standing alone is not enough to establish a bailment, it would support a finding, as required for a bailment, that Atlantic delivered its equipment to Adcock and that Adcock accepted that equipment with an intention of looking after that equipment.

Nevertheless, as one court has noted, "[c]ourts' willingness to find a bailment ordinarily depends on how much control defendant exercised over plaintiff's property." *Herrington v. Verrilli*, 151 F. Supp. 2d 449, 458 (S.D.N.Y. 2001). In *Herrington*, the court found no bailment because the plaintiff and the defendant shared possession and control: the plaintiff had a key to the premises where his property was stored, the plaintiff was able to bring and remove parts without any involvement by the defendant, and the defendant had not undertaken any special duty to look after the plaintiff's property. *Id.* at 459.

The critical question here is the degree of control exercised by Adcock over Atlantic's equipment. If Atlantic was free to come and go as it wished and could remove equipment without the cooperation of Adcock, then there was no bailment. *See* 78 Am. Jur. 2d *Warehouses* § 18 (2002) (no bailment arises if "the owner's control and dominion over the goods is dependent in no degree upon the co-operation of the warehouseman, and access thereto is in no way subject to the latter's control").

In this case, Atlantic's evidence that once they delivered the equipment to Adcock's lot for storage, they did not return until they desired to remove the equipment suggests a relinquishment of exclusive possession. In addition, Atlantic's evidence that Adcock had a locked gate on the road to his property would support a finding that Atlantic's access to its equipment was dependent upon the cooperation of Adcock or his employees. Adcock exercised control over the equipment while it was in his possession by moving it more than 100 yards to a location that he preferred. This evidence is sufficient to give rise to a genuine issue of material fact as to the existence of a bailment, especially in the absence of any evidence from defendant Adcock that Atlantic could access its equipment without the permission and cooperation of Adcock.

[2] Since a jury could find that a bailment existed, the next question presented by this appeal is whether Atlantic offered sufficient evidence that Adcock failed to meet his obligation as a bailee "to exercise due care to protect the subject of the bailment from negligent loss, damage, or destruction." *Strang v. Hollowell*, 97 N.C. App. 316, 318, 387 S.E.2d 664, 665-66 (1990). Atlantic presented evidence that its equipment was damaged when its employee arrived to retrieve it and that an employee of Adcock admitted that Adcock had directed him to move the equipment using heavy equipment. Adcock admitted in his deposition that no one else had been on his property with equipment that could have moved Atlantic's property. Atlantic has, therefore, offered sufficient evidence to permit a jury to find a breach of a bailment contract.

## II

[3] Adcock has argued that despite any breach of a bailment contract, it cannot be held liable because of a clause in the Agreement providing,

> Indemnity: Atlantic shall indemnify, hold harmless Adcock, its agents, servants, successors and assigns from and against all losses, damages, injuries, claims, demands, and all expenses, including legal expenses of any nature whatsoever arising out of the use of said property, with regards to Atlantic equipment only.

Adcock contends that this clause represents an exculpatory clause that insulates it from liability for any damage to Atlantic's equipment. Atlantic's President Madden contends that this clause was intended only to provide for indemnification to Adcock for any liability

that arose to a third party as a result of its equipment. We agree with Atlantic.

As this Court has previously noted, although "there has been some confusion to the contrary, the law with respect to exculpatory clauses is different from that with respect to indemnification clauses." *Candid Camera Video World, Inc. v. Mathews*, 76 N.C. App. 634, 636, 334 S.E.2d 94, 95 (1985), *disc. review denied*, 315 N.C. 390, 338 S.E.2d 879 (1986). Specifically, "[t]here is a distinction between contracts whereby one seeks to wholly exempt himself from liability for the consequences of his negligent acts, and contracts of indemnity against liability imposed for the consequences of his negligent acts." *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965).

When construing a contract, "[w]here the contractual language is clear and unambiguous, the Court must interpret the contract as written." *Kirkpatrick & Assoc., Inc. v. The Wickes Corp.*, 53 N.C. App. 306, 308, 280 S.E.2d 632, 634 (1981). In addition, "[c]ontracts exempting persons from liability for negligence are not favored by the law and are strictly construed against the party claiming such exemption." *Jordan v. Eastern Transit & Storage Co.*, 266 N.C. 156, 161, 146 S.E.2d 43, 48 (1966). A clause will not be construed as exculpatory "in the absence of explicit language clearly indicating that such was the intent of the parties." *Hill v. Carolina Freight Carriers Corp.*, 235 N.C. 705, 710, 71 S.E.2d 133, 137 (1952).

The Agreement does not contain the necessary explicit language. The clause at issue was specifically titled "Indemnity." In addition, "[t]he 'hold harmless' language of [the] clause . . . indicates that this is an indemnification clause." *Candid Camera*, 76 N.C. App. at 636, 334 S.E.2d at 96. The legal effect of indemnity clauses is well-established: "Indemnity contracts are entered into to save one party harmless from some loss or obligation which it has incurred or may incur *to a third party*." *Kirkpatrick & Assoc.*, 53 N.C. App. at 308, 280 S.E.2d at 634 (emphasis added). The plain language of the contract thus indicates that Adcock was only to be indemnified—or held harmless—from any loss or obligation that it incurred to a third party as a result of the Atlantic equipment being stored on Adcock's property. The trial court erred to the extent it based its summary judgment decision on the parties' indemnification clause.[1]

---

1. Because the parties did not include an exculpatory clause in their contract, we need not consider whether an exculpatory clause would be enforceable under the circumstances of this case.

ATLANTIC CONTR'G & MATERIAL CO. v. ADCOCK

[161 N.C. App. 273 (2003)]

III

Atlantic has not argued in its brief any basis for reversing the trial court's grant of summary judgment as to its claim for unfair and deceptive trade practices. Atlantic has, therefore, abandoned any appeal as to that claim.

**[4]** With respect to its claim for punitive damages, a claim for breach of the bailment relationship is a tort claim. *Strang*, 97 N.C. App. at 318, 387 S.E.2d at 666 ("While [the bailment] obligation arises from the relationship created by the contract of bailment, breach of this contractual duty results in a tort."). Upon proof that the defendant is liable for compensatory damages for breach of the bailment relationship and that this breach was accompanied by fraud, malice, or willful or wanton conduct, a plaintiff would be entitled to recover punitive damages. N.C. Gen. Stat. § 1D-15(a) (2001). A plaintiff must prove his or her entitlement to punitive damages by clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b) (2001).

Based on our review of the record, we find that Atlantic has not forecast sufficient evidence of fraud, malice, or willful or wanton conduct to defeat summary judgment. Atlantic has pointed to no conduct that would amount to fraud or suggest malice. At most, Atlantic has offered evidence that Adcock directed that Atlantic's property be moved to another location using heavy equipment. This evidence may rise to the level of negligence, but standing alone falls short of giving rise to a reasonable inference that Adcock engaged in a "conscious and intentional disregard of and indifference to the rights and safety of others . . . ." N.C. Gen. Stat. § 1D-5(7) (2001) (defining "[w]illful or wanton conduct").

We therefore reverse the trial court's grant of summary judgment with respect to Atlantic's first claim for relief for breach of bailment, but affirm as to Atlantic's second claim for relief for unfair and deceptive trade practices and its third claim for relief for punitive damages.

Affirmed in part and reversed in part.

Judges MARTIN and HUNTER concur.