I-CONN HEALTHCARE SOLUTIONS, LLC, Plaintiff,
v.
ADVANCED INTERNET TECHNOLOGIES, INC., Defendant.
No. COA09-81.
Court of Appeals of North Carolina.
Filed January 5, 2010.
This case not for publication
The Yarborough Law Firm, P.A., by Garris Neil Yarborough and Elizabeth Prewitt Gilluly, for plaintiff-appellant.
AIT, Inc., by General Counsel Amber A. Corbin and Assistant General Counsel Mark W. Ishman, for defendant-appellee.
BRYANT, Judge.
Plaintiff I-CONN Healthcare Solutions, LLC (I-CONN) appeals from a summary judgment order entered 15 October 2008 granting defendant Advance Internet Technologies, Inc.'s (AIT) motion to dismiss all claims filed by plaintiff against defendant. For the reasons stated herein, we affirm.

Facts
In 2001, Rezo Luzzatti, Alex Rodriguez, Kelly Williams, Phillip Leon, and Lee Barnard formed I-CONN and developed a website and downloadable software program which allowed physicians to access a formulary of insurance companies from a handheld device. However, in years following, only one sale was made and those funds were eventually refunded. In 2004, developers Rodriguez, Williams, Leon, and Barnard left I-CONN, leaving Luzzatti as the sole member and manager.
I-CONN entered into a contract online with AIT to store the software and make it available via the internet. On 31 March 2004, AIT provided to I-CONN a dedicated server, number 6532. Pursuant to the contract, I-CONN managed the server. I-CONN's previous developers then transferred the software to AIT and destroyed the remaining copies. "That server could be used for mail, websites, FTP, database server; . . . it could be used for a number of different things. [The personnel at AIT] [didn't] know. . . . Because [AIT was] not managing it . . . ."
On 9 February 2005, AIT received a message that I-Connhealth.com was inaccessible and required a reboot. Michael Roberts, AIT's Chief Information Officer and Vice President of Operations, testified during his deposition that the machine was "found to have a capacitor problem on the motherboard . . . ." So, "[t]he drive was removed from [server] 6352 and moved into [server] 6593." On 15 September 2005, I-CONN was notified that its "server suffered an unrepairable hardware failure[,]" but a new server had been built for I-CONN's use. AIT was unable to recover data from the damaged server. I-CONN requested the following information: what happened, the location of the server, and whether information could be extracted from the server's hard drive. On 26 October 2005, AIT notified I-CONN that its data was lost in the hardware crash, no information was retrievable, and that the damaged hardware had been sent back to the vendor.
On 29 November 2005, Brannon Glover, an AIT customer service representative, who had been placed on extended leave, sent I-CONN an email which stated that AIT management instructed him to mislead I-CONN about the status of the damaged hard drive; that rather than sending it back to the vendor, AIT simply lost it; moreover, for servers, AIT utilized desktop personal computers made unstable due to the number of website domains housed on them.
On 23 February 2007, I-CONN filed suit for breach of contract, fraud, punitive damages, and unfair and deceptive trade practices. AIT answered and subsequently filed a motion for summary judgment and Rule 11 sanctions. On 15 October 2007, the trial court granted AIT's motion for summary judgment on all claims asserted by I-CONN but denied its motion for sanctions. I-CONN appeals.
On appeal, I-CONN presents four issues: did the trial court err in granting AIT's motion for summary judgment on I-CONN's claims of (I) breach of contract; (II) fraud; (III) punitive damages; and (IV) unfair and deceptive trade practices.

Standard of Review
"[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2007). "[T]he moving party bears the burden of establishing the lack of a triable issue of fact. The motion must be denied where the non-moving party shows an actual dispute as to one or more material issues." Atl. Contr. & Material Co. v. Adcock, 161 N.C. App. 273, 275, 588 S.E.2d 36, 38 (2003) (citation omitted). "The standard of review for summary judgment is de novo." Forbis v. Neal, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted).

I
I-CONN first argues the trial court erred by granting AIT's motion for summary judgment on I-CONN's claim for breach of contract. On appeal, I-CONN for the first time argues that when it contracted with AIT a bailment relationship was created, and by virtue of this relationship, AIT was obligated to deliver upon I-CONN's request the software or data that had been stored. Instead, I-CONN argues, AIT lost the software when the server crashed and then lost the server's hard drive, thereby breaching their contract.
However, "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount . . . ." State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (citation and quotations omitted). I-CONN did not contend before the trial court that a bailment relationship was created between I-CONN and AIT; therefore, we do not consider that argument now. We only consider I-CONN's breach of contract argument.
"A party asserting breach of contract must show: (1) existence of a valid contract; and (2) breach of the terms of that contract." Cater v. Barker, 172 N.C. App. 441, 445, 617 S.E.2d 113, 116 (2005). In its complaint, I-CONN alleges that it entered into an online contract wherein AIT agreed to satisfy the following condition:
As a World Wide Web, Information Technology, and Internet Service Provider, AIT provides Internet Web hosting, ecommerce, domain registration, and associated services, hereafter referred to as the "Service" or "Services." For this purpose, AIT maintains a network of dedicated server computers, routers, hubs, switches, and other equipment (collectively, the "Network") located in North Carolina, USA, and integrated with the internet. The network sends and receives data and information via the World Wide Web. Customer wishes to connect to the Web and establish an Internet Web presence by utilizing the various resources of AIT's Network and AIT's services.
However, the record indicates that I-CONN contracted for a hosting plan in which AIT provided I-CONN with a dedicated server which I-CONN managed. AIT did not access the server. On 9 February 2005, when AIT received notice that I-Connhealth.com was inaccessible due to a "capacitor problem on the motherboard[,]" "[t]he drive was removed from [the original server] and moved into [a second server]." On 15 September 2005, the second server suffered "unrepairable hardware failure," and AIT built a new server for I-CONN's use.
I-CONN did not allege how AIT breached the terms of its contract; therefore, on the claim of breach of contract, we hold the trial court did not err in granting AIT's motion for summary judgment. Accordingly, this assignment of error is overruled.

II
Next, I-CONN contends the trial court erred in granting AIT's motion for summary judgment on the claim of fraud. I-CONN raises the following two arguments: (A) AIT fraudently induced I-CONN to enter into a contract; and (B) AIT misled I-CONN concerning the location of the hard drive that stored I-CONN's software. We disagree.

A
I-CONN argues that it was fraudulently induced to enter into a contract with AIT based on advertising which stated that AIT was "The World Leader in Dedicated and Shared Web Hosting."
The experience of our times is that a certain amount of puffing of one's own goods . . . has long been prevalent in our culture. Whether such puffing in the case of particular advertisement exceeds the bounds of fairness must be determined by viewing it against the background of all of the relevant facts of that case. One relevant fact concerns the market which the advertisement is designed to influence. A false advertisement designed to influence the buying habits of children should be judged by stricter standards than one directed only toward the knowledgeable and sophisticated.
Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 400-01, 248 S.E.2d 739, 744 (1978).
AIT's advertizing was directed at computer and web savvy individuals who could utilize dedicated servers to host internet domains to make software available via the web. Such clientele, especially those relying exclusively on the resources of AIT to protect valuable software, would not make such investments merely upon the assertions of a self-serving advertisement proclaiming AIT to be "The World Leader in Dedicated and Shared Web Hosting." Therefore, we overrule I-CONN's argument that it was fraudulently induced to enter into a contract based upon AIT's advertising.

B
I-CONN also contends that AIT misled I-CONN concerning what happened to the hard drive that stored I-CONN's software.
An actionable claim for fraud must include the following elements: (1) a false representation or a concealment of a material fact which is (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, and (5) results in damage to the injured party.
Willen v. Hewson, 174 N.C. App. 714, 718, 622 S.E.2d 187, 190-91 (2005).
Here, Luzzati, I-CONN's sole member and manager, gave the following testimony during his deposition:
Counsel: When you contacted [AIT customer service], after the termination of your contract, what was the purpose of that contact?
Luzzati: I was still trying to determine what actually happened.
Counsel: And that was the purpose of your contact?
Luzzati: Yes.
Counsel: You had received other emails and other communications, or other ticket items and other communications from AIT, regarding what had happened. Is that correct?
Luzzati: Yes.
Counsel: And you didn't believe those to be true?
Luzzati: Many of them [sic] did not believe them to be true, that's correct.
. . .
Counsel: From your experience in being in a data center, how would you imagine that a server could be lost?
Luzzati: It is beyond my comprehension really.
Luzzati's testimony, as the sole member and manager of I-CONN, was that he did not believe AIT lost or misplaced the server on which I-CONN placed its software. Therefore, I-CONN cannot satisfy the essential element of deception necessary to maintain a claim for fraud. Accordingly, we overrule I-CONN's assignment of error.

III
I-CONN next argues that the trial court erred in granting AIT's motion for summary judgment on the claim for punitive damages.
Under North Carolina General Statutes, section 1D-15(a), "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) [f]raud[;] (2) [m]alice[;] (3) [w]illful or wanton conduct." N.C. Gen. Stat. § 1D-15(a) (2007). As, I-CONN has failed to establish a claim on which to premise compensatory damages, we overrule this assignment of error.

IV
Last, I-CONN argues that the trial court erred in granting AIT's motion for summary judgment on the claim of unfair and deceptive trade practices. I-CONN argues that AIT's assertions to being "The World Wide Leader in Dedicated and Shared Web Hosting" and using industrial grade infrastructure to ensure maximum uptime with round-the-clock digital, electronic, and physical security [R. 530], were substantially injurious, unfair and had the tendency to mislead. We disagree.
"To establish a prima facie claim for unfair trade practices, the plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, N.C. Gen. Stat. § 75-1.1 (1994), and (3) the act proximately caused injury to the plaintiff." Pleasant Valley Promenade v. Lechmere, Inc., 120 N.C. App. 650, 664, 464 S.E.2d 47, 58 (1995) (citation omitted).
Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . . [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required. . . . [T]he consumer need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception . . . [.]
Forbes v. Par Ten Group, Inc., 99 N.C. App. 587, 600, 394 S.E.2d 643, 650 (1990) (citation omitted).
I-CONN argues that AIT utilized Dell desktop computers for servers, which AIT described as "not fit for AIT's commercial web server operations, and moreover, . . . not fit for any purpose since they overheated, crashed, and lost data at a minimum rate of One Hundred percent (100%)" amounted to an unfair and deceptive trade practice.
Brannon Glover was employed by AIT for a couple of months in an entry level tech support position. During his deposition, he gave the following testimony with regard to the 29 November 2005 email Glover sent to I-CONN which stated that "AIT is just a messed up company. They don't even supply real servers for clients."
Q. [Counsel]. [N]ow, read me the next sentence please.
A. [Glover]. "All they have in the so-called server room are low-end desktop PCs that are loaded with domain names."
Q. Was that true at the time?
A. That's what I was told, yes. That's what I was told.
Q. Was that consistent with your observation of the server room?
A. They looked like, you know, just regular old  regular computers, regular desktops.
Michael Roberts, AIT's CIO and Vice President of Operations, testified in his deposition that AIT purchased DELL Dimension 4600C and DELL Optiplex GX-270S servers for use in its facility.
A. [Roberts]. They are both small form factor machines, which typically they look kind of like a VCR almost.
Q. [Counsel]. Kind of like a desktop computer?
A. Similar.
. . .
A. We made a business decision on the Dimensions because they came with a 1-year warranty, that we were not going to purchase a warranty, we were going to purchase additional parts.
. . .
For the Optiplex line, because they came with a 3-year warranty, it was a little bit different business decision. We decided to utilize the 3-year warranty and return, you know, what parts we needed. . . .
. . .
Q. Now, because you have had a dispute with Dell Financial/Dell and were not paying them, Dell, in turn refused to honor their warranty with you.
A. Right. . . .
. . .
Q. Okay. Now, when Mr. Luzzatti was looking to pick out a computer from [AIT's] advertisements, how would he know . . . that he was getting [an Optiplex] GX-270 or a Dimension 46C?
A. The only differentiation on our website had nothing to do with model number or model type. It was the amount of memory and the type of processor.
Because models change within a several month period, so we do not advertise the model number. We advertise that it was a Dell, and we advertise that it had X-amount of memory, and the processor was XP.
After a review of the record, we hold that I-CONN has failed to establish a genuine issue of material fact regarding an element required to establish a prima facie case that AIT engaged in unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. See Pleasant Valley Promenade, 120 N.C. App. at 664, 464 S.E.2d at 58. Accordingly, we overrule this assignment of error.
Affirmed.
Judges WYNN and McGEE concur.
Report per Rule 30(e).